and we'll turn to the third case 20-1538 Sapio v. Selux, S-E-L-U-X Corporation. We'll hear from Ryan Conan. May I please record? Good afternoon, your honors. I am Ryan Conan and I represent the I'm going to proceed slowly so that you can hear what I will be speaking of. At any time, judge, if you don't catch what I say, you could stop me so I could go slowly because I don't want your honor to miss what will come out of your mouth. That would be prejudicial to my client. So, your honor, this court should reverse the lower case decision in this matter because the circumstances surrounding my client termination gave rise to inferiority of discrimination. This is really what this case is about because it's the only issue that the lower court would act on. So, as the court will notice, my client is of Asian descent and she's been the executive assistant to the vice president of the Selux Corporation. She has a blemish record. She even has a raise and promotion and she was working pretty well and then when she was informed by an employer, her position has been eliminated. So, which means that position never existed. So, then she will no longer be able to work and the position will be executive assistant to the vice president. So, as such, she left an employer. Come to find out six months later that, in fact, the position has not been eliminated but instead someone out of the protected class has been hired to be the executive assistant to the vice president, the same position she was holding. And this is why she brought this case because following this court precedent, which was said in Little John, that if someone out of the protected class was terminated, it should at least give the presumption that she was discriminated against. This is what she alleged in the complaint. However, the lower court dismissed the case because the lower court was not pleased by my client. So, the lower court actually disregarded numerous precedents from this court because my client showed and my brief will show that as well, that she was a member of the protected class and she was terminated and she was replaced by another person that she named, which was of Caucasian descent, to assume a position. So, based upon that, I will ask this court to remain this case to the lower court so that an appropriate decision can be entered. My client's position is not just that she was terminated, but the fact that the employer misrepresented to her that the position no longer existed would give her a reason to believe that in fact she was discriminated against. Your first three minutes have expired. Yes, thank you, Your Honor. So, if you have some questions for me, Your Honor, before I continue, but I expired my first three minutes. I have a question. Yes, go ahead. Is there any evidence of discriminatory animus besides the fact that this position stayed open for six months and then it was filled by someone who was Caucasian? Is there any evidence of animus which is something that you must show or at least allege? Yes, Your Honor. The position did not stay open for six months, Your Honor. She learned that the position was open for six months. It might have been filled right after she left. We didn't get the chance to get to that. Although the law requires that at this stage, at least the plaintiff needs to be afforded at least the discovery so she can see what will really happen. Now, my client did not witness anything that would suggest discrimination against her. But the fact that she's been misrepresented and lied to, to me could qualify as a subsequent event that would lead to discrimination. Simply put, I would say that this panel today has three members. Suppose they come and they say, okay, we no longer need three members, we need only two. And the day after you come to find out that it was actually three, that we never took one judge of the panel out, I mean, that would raise some suspicion. So even though she did not witness anybody alleging anything that would be discriminatory, but the fact that she was misrepresented and told that a position was eliminated when in fact it wasn't, could qualify as well. And this is what we allege in our complaint and also in our briefs. I don't know if that answers the question, but it does. Any questions, Judge Poulin? Well, I don't think you've answered my question completely, counsel. I know that we have said that an inference of discrimination arises when an employer replaces a terminated or demoted employee with an individual outside the employer's protected class. But you have to have something to persuade us that all this was because of your client's protected class. And there is nothing in the record about this replacement, whether she was doing the same job, whether she worked, I mean, your client never worked for the Vice President Kinder, who took this executive assistant. We don't have enough. There's no allegation that this was done because there was animus toward your client. See if you could help me with that. And that's what I just said, that although there's no allegation pertaining to that, but what about the misrepresentation? Why would they lie to her? Why would they say that your position is eliminated? Could that not qualify as a subsequent event that they did? Counsel, excuse me. You don't, in fact, know if the position wasn't eliminated and subsequently a new position was created. You don't know that. And we can't tell that from your allegations. But my position is that in order to get rid of my client, they lied to her that a position was eliminated. That's what they told her. But in fact, she realized that the position was never eliminated, that it was the same position. And the person who was now holding that position was also named as a Caucasian descent. So in my complaint, I'm alleging that the same position existed. And then now it's somebody else who's assuming that position. All right. Thank you. Judge Bianco. I have no questions. All right. So, Mr. Conan, you've reserved three minutes. But let's hear now from Mr. Manfredo. Thank you, Your Honor. May it please the court. Robert Manfredo of Bonn, Shenick and King on behalf of Hallease, Salix Corporation, Yvonne Rivera, and Ed Wolf. This court should affirm the district court's decision in order to dismiss appellant's complaint for two reasons, Your Honors. First, the district court properly held that appellant failed to plead a plausible claim of race discrimination under Section 1981 and the human rights law. And second, although the district court didn't reach the issue, the complaint should also be dismissed because appellant signed a valid and unambiguous waiver and release that bars her claim. As the appellant pointed out in his argument and in his brief, the appellant was advised on January 10th of 2018 by Mr. Wolf and Ms. Rivera that her position was being eliminated and that she was being terminated from her employment with Salix Corporation. At that time, Ms. Rivera and Mr. Wolf provided the appellant with a separation agreement that offered to pay her two months of severance. It's undisputed that on January 29th, 2018, 19 days later, after that initial meeting, the appellant signed the separation agreement, which included a valid and unambiguous release of her claim against the appellees related to her employment. Now, in the appellant's initial brief, the appellant did not only omit any discussion regarding the validity of this release, but also failed to include the agreement itself, which was submitted in support of appellee's mention to be dismissed to the district court. That agreement is now before Your Honors as part of appellee's supplemental appendix. In a reply brief, appellant argued that the issue of the release is burdensome and not properly before the court. This is inaccurate in both respects. In Booking v. General Star Management Company, this court held that it has discretion to consider issues that were raised, briefed, and argued in the district court, but that were not reached. Because this issue was thoroughly briefed at the district court level and it's a positive appellant claim, it is within the discretion of this court to now rely on those arguments in affirming the dismissal of plaintiff's amended complaint. The release at issue specifically references appellant's claims under Section 1981, the human rights law, and common law claims, including appellant's claims for fraud. The only issue remaining is whether the agreement was entered into knowingly and voluntarily. To analyze that part of the issue, Your Honors, we would look at Morven v. AT&T Communications, which set forward a six-factor test for determining whether the release was signed knowingly and voluntarily. As a first factor in that test is looking at the clarity of the agreement. And in looking at the clarity of the agreement, the appellant actually acknowledged in signing the agreement that she knowingly released and discharged the employer from all claims which she ever had that related to her employment with Salux Corporation. That factor was decidedly in favor of enforceability of this agreement. The second factor is looking at the time that the plaintiff had to consider the actual agreement itself. In accordance with the OBWPA, plaintiff had 21 days to consider the agreement and actually took 19 days to sign it. I see my first three minutes, I believe, are up, so I'll stop for a moment if any of Your Honors have any questions. Thank you. Judge Pooler, any questions? I have no questions. Thank you. Judge Bianco? Yes, I want to go to the pleading issue, Mr. Manfredo. I guess the law of this circuit is, I think, fairly clear. Zimmerman, I'll quote you Zimmerman, the mere fact that a plaintiff was replaced by someone outside the protected class will suffice for the required inference of discrimination at the prima facie stage of the Title VII analysis. We repeated that in Cook. We said that in Littlejohn. We said that in Carlton, the mystic transportation, and I could cite other cases, and then there are a whole host of district court cases adhering to that rule. So my question to you is, isn't that what's being alleged here is that she was replaced by someone outside of a protected class for the exact same position that she has? So why isn't that sufficient? Obviously, as Judge Pooler pointed out, she's going to have to ultimately demonstrate discriminatory animus, but we're talking about the pleading stage, which we describe as minimal. So are you asking us to do something completely inconsistent with our precedent? Your Honor, I don't believe that it's entirely inconsistent with precedent. When we look at the cases like Littlejohn, Carlton, Sella Cruz, Cook, there are, in addition to the allegations related to replacement of the individual with someone from a different protected classification, there are, generally speaking, other allegations relied on by the court. We said, I understand there may be other facts in those cases, but you heard the quote. The quote is pretty clear, and we've repeated that quote numerous times. So I don't know whether another case may have had some other fact in it or not. It's dispositive. We said at this stage, all you have to say, and as your adversary pointed out, they actually have more than that. They don't just have that she was replaced by a Caucasian for the exact same position. They allege further that she was given a false reason, that she was told it was because they're eliminating the position, which she alleges that they did not do. So she actually has two things. She has already alleged the reason is contextual, that's a lie, and that she was replaced by a Caucasian. So why isn't that enough? Again, at the pleading stage, whether she can prove that or not, whether that'll be enough at summary judgment is a different matter, but why isn't it enough at the pleading stage? I understood your honor, and I do acknowledge that that is the second circuit's position in a variety of cases. When I would look at this particular case and why I think it's distinguishable, and we look at the facts that are alleged in this particular complaint, the appellant alleges that she worked for both the Director of Engineering and the Vice President for Manufacturing. That's alleged in her complaint. What she later alleges is that six months after she lost her position with the company, that she found out that an individual named Klaus Kinder hired someone in a lateral position who happened to be Caucasian. Now, I understand that the court's precedent, but when we look at this from a factually distinct perspective, I think that you can distinguish this particular case because of the fact that in six months after her termination, other than the bare allegations that they've misrepresented to her that her position wasn't being eliminated, there really are no other facts to support that particular allegation. Ms. Dunham, who was- I don't understand. You're going to say because it was six months later, it wasn't like the day later? In Carlton, it was three months later. We're talking about the pleading stage. We're going to say six months doesn't allow for that inference? I think that would be an extraordinary thing as well. She did allege in paragraphs 29 and 34 that it was for the- I understand there may have been other aspects of the job or whatever, but she alleges twice that it was to assume her position as the executive assistant to the vice president. Not some other executive assistant position, but her position. Now, I don't- as Judge Poole pointed out, we don't know what the responsibilities are, but she alleges it was her position. I understand that, Your Honor. I guess what I would say is in the event that we were to look at this from that standpoint and we were to assume that she does allege a plausible claim of race discrimination, which I do think is, again, factually distinct in this particular case because of the vagueness of the allegations that are laid out in the amended complaint, particularly given the relationship that she had with Mr. Kinder and what happened to her position as it related to the dual role that she held as an executive assistant to these two different positions, the director of engineering and the vice president for manufacturing. Again, I think that distinguishes this particular case in addition to the fact that there are no other allegations of any type of race discrimination. But even if we were to assume that she can make out that prime aphasia case on the race discrimination claim, there has been nothing to suggest that she can overcome the release that she has signed that waived her claims against the company in this case. This is my last question. On that, as you pointed out, we have the Borman factors and the district court didn't decide that. So you're asking us on appeal to basically go through the Borman factors and rule in your favor on something that was not addressed by the district court. And on some of the factors, we don't even know one of the factors is her education and her business experience. We have no idea what that is. With all due respect, your honor, I think she does allege in her complaint that she was a very well-qualified individual who worked for seven years in an executive assistant capacity. So when we look at cases that discuss that particular factor, what about the fact that she alleges that she signed the agreement because she was induced with a fraudulent statement that her position was being eliminated? Isn't that something she potentially proves that she wouldn't have signed the release at all if she hadn't been told your position is gone and that she said it was a lie? No, your honor. On that particular issue, if we look at the agreement, it has an integration clause, which forecloses that aspect of the justifiable reliance that she would need to establish to lay out a claim for fraud. In addition to that, we have advanced arguments with regard to both ratification and their tender back doctrine. Ms. Zappia did not return the consideration that was given to her as part of the severance agreement until well after this lawsuit was commenced and after we had initially filed our original motion to dismiss in this case. So what about the O'Brien case that says you don't need to return it before the lawsuit? Wasn't the Supreme Court saying that case was okay after the lawsuit? I don't know that they specifically reached the issue of that they could return it after the lawsuit was commenced. The cases that I've read in the second circuit, your honor, have said that the consideration has the tender back doctrine works as a condition precedent to that's the Davis versus. I understand that. But which case, which second circuit case is it has to happen before the complaint is filed? Which second circuit case is that? Well, in your honor, I think when we look at the language, they refer to it as a condition precedent to suit, which to me would suggest that it has to be prior to actually commencing the suit. Okay. All right. Thank you. Excuse me. You have one minute left. All right. Okay. Thank you. So now this is Mr. Kona again. Thank you, your honor. I will go back now. I'm sorry. I think that I think I still have another minute. Yeah. Mr. Manfredo has one minute. Oh, sorry. So, so your honors, just, just to briefly conclude, and I'll, I'll use the remaining time to answer any questions that any of you may have. I think when we look at the, at this case globally, and, and I do I do agree that the court did not decide, the district court did not decide the release issue. However, I think when we look at the factors under Borman and we look at the allegations in the complaint, we can satisfy those Borman allegations or Borman factors rather in deciding this particular issue. And the court does have discretion to look at that issue on appeal. And with respect to those, with those factors, we can look at the allegations in the complaint, the allegations that are, are, are set forth in the record that's been provided to the court and actually analyze those, those issues that we, we've set forth in our appellate brief. With my remaining time, I'll answer any questions that the court may have and otherwise rely on our papers. Thank you very much. Mr. Conlon. Thank you, your honor. I will just briefly state that my client did return the money she received and there is, it was, it was, when she filed her first complaint and the, and the appellate filed a motion to dismiss, what the court stated was that she can at any time amend the complaint. But when I amended the complaint, that's when she returned the money. So I do not understand opposing counsel position, stating that my client never returned back the money, which we did. In any event, as Honorable Brunk and Bianco pointed out, my client was lied to, and there was no reason for this lie. Without the lie, she wouldn't have signed this agreement. Only in this case, she made that she trusted the employer, not knowing that the employer would actually lie to her and say that your position is gone. I mean, we could just come to her and tell her you fired, but we couldn't because she's putting so much good work, good effort, but didn't have that reason to do so. So to say today that she signed an agreement and based upon that she'd be fired, I don't think that would be fair. Thank you, your honor. And I thank you, Mr. Conlon, for your time. Thank you very much. We'll reserve decision in 20-1538. Sapio versus Selleck's Court.